UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BETTY HOSKINSON,
Individually and as Surviving Spouse of
RONALD HOSKINSON, Deceased,

      Plaintiff,

v.                                         Case No. 11-1190-JTM-DJW

HIGH GEAR REPAIR, INC.,

      Defendant.

## MEMORANDUM AND ORDER

The matter is presently before the Court on Plaintiff's Second Motion to Amend Complaint (ECF No. 93). Plaintiff requests leave to amend her complaint to change the capacity in which she brings this case from "surviving spouse" to "special administrator of the estate" of her late husband, Ronald Hoskinson, deceased, and to clarify the allegations with respect to the estate's survivor claim under K.S.A. 60-1801. The Court previously denied without prejudice Plaintiff's first motion to amend her complaint, finding there was no state court order appointing her as special administrator of the estate.[1] Plaintiff has now obtained a state court order appointing her as special administrator of the estate. As explained below, her motion is granted.

**I.    Background Facts**

On March 10, 2010, while working in Haskell County, Kansas, for his employer Sallee, Inc., Ronald Hoskinson caught his shirt sleeve in the unguarded power take off on an anhydrous ammonia tank trailer, which had previously been refurbished and serviced by Defendant. As a result, Mr.

---

[1] *See* June 13, 2013 Mem. & Order (ECF No. 86).

Hoskinson became entrapped in the device, which caused him to sustain massive and traumatic injuries. He later died from those injuries on March 28, 2010.

On June 17, 2011, Mr. Hoskinson's spouse, Betty Hoskinson, filed a Petition for Issuance of Special Administration in the District Court of Gray County, Kansas, captioned *In the Matter of the Estate of Ronald Hoskinson*, Case No. 11 PR-11.[2] On June 20, 2011, the Gray County District Court issued Letters Testamentary under the Kansas Simplified Estates Act, which stated:

> KNOW ALL PERSONS BY THESE PRESENTS:
> BETTY HOSKINSON, a resident of the state of Kansas, named as Special Administrator of the estate of Ronald Hoskinson, deceased, having been appointed and qualified as Special Administrator, is hereby granted Letters Testamentary issued under the Kansas Simplified Estates Act with full power and authority as provided by law.[3]

No order appointing Plaintiff special administrator of Ronald Hoskinson's estate was entered in the Gray County action. The Gray County action was subsequently administratively terminated on January 9, 2012. No probate estate was ever opened.

On July 18, 2011, Plaintiff Betty Hoskinson filed this diversity action "individually and as surviving spouse of Ronald Hoskinson, deceased." In her Complaint (ECF No. 1), she alleged that she "is the surviving spouse of Ronald Hoskinson and brings this action for damages sustained by Ronald Hoskinson, as well as her individual damages." Plaintiff further alleged in paragraph 20 of the damages section of her Complaint that "[a]s a result of negligent acts of the defendant Ronald Hoskinson suffered traumatic and extensive injuries, and conscious pain and suffering." She also alleged that as his surviving spouse, she "suffered the loss of spousal care, guidance, support and

---

[2] Pet. for Issuance of Special Administrator, Ex. 1 to Def.'s Response to Pl.'s Mot. to Amend Compl. (ECF No. 68-1).

[3] Letters Testamentary, Ex. A to Pl.'s proposed First Am. Compl. (ECF No. 94-1) at 8.

income, comfort, and mental anguish from the trauma and death of her husband, for which she claims damages."[4]

After Defendant failed to answer, Plaintiff filed a motion for default judgment on August 16, 2011. After holding a hearing on August 31, 2011, the Court granted the motion and entered an Order for Default Judgment and Damage Determination on September 1, 2011. The Order entered default judgment against Defendant in the total amount of $1,163,610.83, assessed as follows: Conscious pain and suffering $250,000.00; Wrongful death $250,000.00; Worker's compensation payments $411,607.63; and Lost income $252,003.20.[5]

On December 7, 2011, Defendant filed a motion to set aside the default judgment and dismiss complaint. Finding that Defendant had shown excusable neglect for its failure to answer, the Court granted the motion and set aside the default judgment on April 12, 2012.[6]

On February 26, 2013, Defendant filed a motion to amend its answer to add certain defenses, including allegations that conscious pain and suffering is legally immaterial and an heir cannot recover for any damages that accrued to the decedent between the time of injury and death. Shortly thereafter on March 12, 2013, Plaintiff filed a motion to amend the complaint to change the caption from "Betty Hoskinson, individually and as *Surviving spouse* of Ronald Hoskinson, deceased," to "Betty Hoskinson, individually and as *Special Administrator of the Estate* of Ronald Hoskinson."[7] She also sought to amend her complaint to add allegations with respect to the survival claim.

---

[4]Compl. (ECF No. 1) ¶ 20.

[5]Order for Def. J. & Damage Determination (ECF No. 9).

[6]*See* Mem. & Order (ECF No. 21).

[7]First Am. Compl. (ECF No. 67-1) (emphasis added).

On May 17, 2013, the Court convened the scheduled Final Pretrial Conference. After reviewing the parties' proposed Pretrial Order and pending motions to amend, the Court postponed the Final Pretrial Conference and ordered the parties to submit supplemental briefing. Based upon the supplemental briefing, the Court concluded that there was in fact no existing order which appointed Plaintiff as special administrator.[8] In the absence of such an order, the Court held that Plaintiff could not proceed in this action as the special administrator of her late husband's estate and denied her motion to amend the complaint as futile.[9] The denial, however, was "without prejudice to further motion in the event Plaintiff is able to obtain an order appointing her as special administrator of Ronald Hoskinson's estate or otherwise show that she has been appointed special administrator."[10]

On June 26, 2013, Plaintiff filed the present motion to amend her complaint in which she advises the Court that the state probate court has entered an order appointing her as special administrator of the estate of Ronald Hoskinson, deceased. That Order Appointing Special Administrator Nunc Pro Tunc was entered by the state court on June 26, 2013, and states that it is "deemed effective from the date of [the] original oral order made on June 20, 2011."[11]

## II. Standard for Amendment of Pleadings

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. It provides that the parties may amend a pleading "once as a matter of course" before trial if they do

---

[8]*See* June 13, 2013 Mem. & Order (ECF No. 86).

[9]*Id.*

[10]*Id.* at 10.

[11]Order Appointing Special Administrator Nunc Pro Tunc, Ex. A to Pl.'s Mem. in Supp. (ECF No. 94-2).

so within (A) 21 days after serving the pleading, or (B) "if the pleading is one to which a responsive pleading is required," 21 days after service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[12] Other amendments are allowed "only with the opposing party's written consent or the court's leave."[13] Rule 15(a)(2) also instructs that the court "should freely give leave when justice so requires."[14] The court's decision to grant leave to amend a complaint after the permissive period is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[15] The court may deny leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[16]

A party objecting to the proposed amendment on grounds of futility has the burden to establish its futility.[17] A proposed amendment is futile if the amended claim would be subject to dismissal.[18] In determining whether a proposed amendment should be denied as futile, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant

---

[12]Fed. R. Civ. P. 15(a)(1).

[13]Fed. R. Civ. P. 15(a)(2).

[14]*Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[15]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[16]*Id.* (quoting *Foman*, 371 U.S. at 182).

[17]*Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *5 (D. Kan. Aug. 29, 2011).

[18]*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

to Fed. R. Civ. P. 12(b)(6).[19] In doing so, the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party.[20]

## III. Plaintiff's Second Motion to Amend Complaint (ECF No. 93)

Like her first motion to amend, Plaintiff seeks leave to amend her complaint to change the capacity in which she brings the survival action. She seeks to amend the caption from "Betty Hoskinson, individually and as *Surviving spouse* of Ronald Hoskinson, deceased," to "Betty Hoskinson, individually and as *Special Administrator of the Estate* of Ronald Hoskinson."[21] She also seeks to amend Count VI of her complaint, entitled "Nature of Damages Actions," to add "Plaintiff brings this action on his behalf as Special Administrator of his estate, pursuant to K.S.A. 60-1801," and "Plaintiff brings this action on her own behalf and the decedent's other heirs-at-law, who ever they may be, pursuant to K.S.A. 60-1901."[22] She also seeks to add an allegation that she is the "Special Administrator of the Estate of Ronald Hoskinson, having been appointed to such position by District Magistrate Judge Joey D. Duncan, in the District Court of Gray County, Kansas, in Case No. 11 PR-11, on June 20, 2011."[23]

Defendant objects to Plaintiff's proposed amendment, arguing that the Court lacks subject matter jurisdiction to even consider Plaintiff's motion because she lacks Article III standing to prosecute the estate's survival claim and the statute of limitations has since expired. It argues that

---

[19] *Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007).

[20] *Anderson*, 499 F.3d at 1232.

[21] Proposed First Am. Compl. (ECF No. 94-1) (emphasis added).

[22] *Id.* at 6.

[23] *Id.* at 1–2.

Plaintiff lacked standing at the time the original complaint was filed because she brought the action only as an individual and as "surviving spouse," neither of which conferred standing to prosecute a survival claim by the estate under Kansas state law. Defendant further argues that Plaintiff cannot now move to substitute herself as special administrator of the estate based upon the recent state court order appointing her as such because the statute of limitations has expired and the amendment cannot relate back under Fed. R. Civ. P. 15(c) or 17(a)(3) as those rules cannot expand jurisdiction.

### A. Effect of Nunc Pro Tunc Order

Before addressing Defendant's jurisdictional arguments, the Court must determine the effect of the state probate court's June 26, 2013 Order Appointing Special Administrator *Nunc Pro Tunc*, which appointed Plaintiff as special administrator of her late husband's estate and deems itself to be effective "from the date of [the] original oral order made on June 20, 2011." This is important because if the Court determines that the Nunc Pro Tunc Order establishes that Plaintiff was indeed appointed as special administrator of her late husband's estate on June 20, 2011, this would largely undercut Defendant's arguments with respect to her lack of standing at the time she filed her original complaint and her appointment after the statute of limitations expired.

Defendant argues that Plaintiff cannot use the Nunc Pro Tunc Order from the state court retroactively. It argues that a nunc pro tunc order cannot correct a judicial error involving the merits, supply a judicial omission or an affirmative action which should have been taken by the court, or to show what the court should have or intended to decide, as distinguished from what it actually did decide. If further argues that the probate court's failure to enter an order of appointment means there is no prior journal entry or order to clarify or correct.

The Court agrees with Defendant on this point, that the Nunc Pro Tunc Order obtained by Plaintiff cannot retroactively appoint her as special administrator of the estate. K.S.A. 60-260(a) governs orders nunc pro tunc and provides in pertinent part: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order or other part of the record." A nunc pro tunc order, as authorized by K.S.A. 60-260(a), however, may not be used to correct a judicial error involving the merits, or to enlarge the judgment as originally entered.[24] The purpose of a nunc pro tunc order is to "provide a means of entering the actual judgment of the trial court which for one reason or another was not properly recorded."[25] A nunc pro tunc order may not be made "to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission or an affirmative action which should have been, but was not, taken by the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide."[26]

Here, the Court finds the purpose of the Nunc Pro Tunc Order was to supply a judicial omission which should have been, but was not, taken by the state probate court—namely the entry of an order appointing Plaintiff as special administrator. The Court also notes there is no prior order or journal entry for the Nunc Pro Tunc Order to correct or clarify. As the Court previously found in its June 13, 1013 Memorandum and Order, "the Letters Testamentary [was] not an order appointing Plaintiff as special administrator of her late husband's estate," and "[n]o order appointing

---

[24] *Wallace v. Wallace*, 214 Kan. 344, 349, 520 P.2d 1221. 1225 (1974).

[25] *Id.*

[26] *Id.*

[Plaintiff] as special administrator of the estate was ever entered."[27] While Plaintiff asserts that the probate court made an "oral order" appointing her as special administrator, the docket sheet from the Gray County District Court proceedings does not reflect that any "oral order" was entered on the record, or that a hearing or conference was held. In the absence of any actual "order" that could be corrected by the Nunc Pro Tunc Order, the Court will not treat the Nunc Pro Tunc Order as retroactively appointing Plaintiff as special administrator of her husband's estate on June 11, 2011. For purposes of this motion, the Court finds that Plaintiff was appointed special administrator of the estate on June 26, 2013, the entry date of the Nunc Pro Tunc Order.

**B.    Standing**

With respect to Defendant's argument that the Court lacks subject matter jurisdiction to even consider Plaintiff's motion, the Court finds that it has jurisdiction over this action, including jurisdiction to hear and decide Plaintiff's motion. While Defendant attempts to frame the issue in terms of Plaintiff lacking Constitutional Article III standing—the type of standing required for the Court to have subject matter jurisdiction, the Court finds that the standing issue is more appropriately addressed as a question of legal capacity rather than constitutional standing.[28] In *Citizens Concerned*

---

[27] June 13, 2013 Mem. & Order (ECF No. 86) at 8–9.

[28] The Court notes the distinction between "standing" in the sense of constitutional Article III case and controversy standing and its ordinary sense of statutory or contractual standing—i.e., being in a position to assert or enforce legal rights or duties. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1229 n.6 (10th Cir. 2012) (distinguishing between Article III standing and statutory or contractual standing); *Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990) ("The law of standing is almost exclusively concerned with such public law questions as determinations of constitutionality and review of administrative or other governmental action. The term 'standing,' however, is used loosely in many contexts to denote the party with a right to bring a particular cause of action. This practice leads to much confusion when it is necessary to distinguish between 'standing' in its most technical sense and the concept of real party in interest under Fed. R. Civ. P. 17(a).") (citations omitted). *See also Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999) (noting that as a matter of the English language, the word "standing" can
(continued...)

*for Separation of Church and State v. The City and County of Denver*,[29] the Tenth Circuit differentiated between capacity to sue and standing to sue in that the former relates to the right to come into court, while the latter relates to the right to relief. While lack of *standing* is a component of subject matter jurisdiction and events occurring after the filing of a complaint cannot retroactively create jurisdiction, a party's lack of *capacity* to sue does not implicate subject matter jurisdiction.[30]

The Kansas Supreme Court has specifically addressed whether the appointment of a special administrator after expiration of the statute of limitations bars the trial court from asserting jurisdiction over the action.[31] In *Vorhees v. Baltazar*,[32] it held that the fact an administrator had not been appointed and lacked capacity to be sued when the lawsuit was filed did not deprive the trial court of subject matter jurisdiction.[33] Although the *Vorhees* case involved the appointment of an administrator for the estate of a deceased defendant rather than a plaintiff, the Court here finds the *Vorhees* distinction between standing and "legal capacity *to sue* or be sued" equally applicable to a plaintiff.

In addition to *Vorhees*, several other cases, including two from this district, have found objections to the substitution of the person appointed as special administrator of an estate raise

---

[28](...continued)
be used to describe the legal right to complain, but "standing" in this context is entirely distinct from "standing" for purposes of Article III).

[29] 628 F.2d 1289, 1300 (10th Cir. 1980).

[30]*Federal Deposit*, 894 F.2d at 1236; *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185–186, 106 P.3d 483, 488 (2005).

[31]*Vorhees v. Baltazar*, 283 Kan. 389, 394–97, 153 P.3d 1227, 1232–33 (2007).

[32]*Id.*

[33]*Id.*

questions of capacity rather than standing.[34] In *Unzueta v. Steele*,[35] the court granted the plaintiff's motion to substitute her capacity as administrator of the estate, rejecting the defendants' standing and jurisdiction arguments. Similarly, in *Edens v. Laubach*,[36] the defendants asserted that the plaintiff lacked standing to maintain the action because he was only the heir and not the administrator of the estate. The court—noting that the concepts of real party in interest, standing, and capacity to sue are often confused—determined that the relevant issue was whether the plaintiff lacked the capacity or right to bring the action.[37] In *Hill v. Martinez*,[38] the Colorado federal district court, in reaching its decision that capacity to sue rather than standing was the relevant inquiry, found that "the judicial determination of who should represent the estate turns not on who has suffered an injury from actions taken against the decedent" (a standing inquiry), but rather on "who can best carry out the duties, fiduciary and otherwise, imposed by the appointment" (a capacity inquiry).

Having found the relevant issue is whether Plaintiff has the legal capacity—as opposed to

---

[34]*Unzueta v. Steele*, 291 F. Supp. 2d 1230, 1233–34 (D. Kan. 2003) (granting plaintiff's motion to substitute her capacity as administrator of the estate and finding that it did not raise questions of standing and jurisdiction)*; Edens v. Laubach*, 838 F. Supp. 510, 513–14 (D. Kan. 1993) (question of who can bring estate's causes of action is better characterized as one of capacity to sue, and not standing). *See also Firestone v. Galbreath*, 976 F.2d 279, 282 (6th Cir. 1992) (question of whether grandchildren plaintiffs could sue on behalf of the estate "would seem to be a question of capacity rather than standing."); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (defendant's argument that plaintiff lacked standing to bring survival claim because she was not appointed until after statute of limitations expired was "more appropriately characterized as one of capacity" rather than standing); *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1122 (D. Colo. 2000) (whether plaintiffs can sue on behalf of an estate is a question of capacity not standing).

[35]291 F. Supp. 2d at 1234.

[36]838 F. Supp. 510, 513–14 (D. Kan. 1993) (A better characterization of defendants' argument is that plaintiff lacks the capacity or right to bring this action because the normal rule . . . is that the administrator and not the heirs have the right to bring the estate's causes of action).

[37]*Id.*

[38]87 F. Supp. 2d 1115, 1122 (D. Colo. 2000).

constitutional standing—to bring a survival claim on behalf of her late husband's estate, the Court must determine whether Plaintiff has the requisite legal capacity to bring the estate's survival claim and whether the substitution would relate back to the time the original complaint was filed. A determination of whether Plaintiff has the legal capacity to bring the survival claim on behalf of the decedent's estate involves an analysis of the applicable Kansas state law. As set out in the Court's prior June 13, 2013 Memorandum and Order, Kansas law requires that a survival action be maintained by the decedent's personal representative and cannot be prosecuted by a decedent's heirs, which would include the decedent's surviving spouse.[39] Plaintiff can thus only bring the survival action in her capacity as special administrator of the estate and not in her capacity as surviving spouse. In her present motion for leave to amend, Plaintiff has shown that she has the appropriate legal capacity to assert a survival claim, having been appointed special administrator of her late husband's estate by the state probate court's June 26, 2013 Nunc Pro Tunc Order.

### C. Statute of Limitations

The Court next addresses whether Plaintiff's appointment as special administrator on June 26, 2013—after the statute of limitations expired—cures her lack of capacity at the time she filed the complaint. The Tenth Circuit has weighed in on this issue. In *Metropolitan Paving Co. v. International Union of Operating Engineers*,[40] the Tenth Circuit commented that "[t]he fact that an applicable statute of limitations may have run before the real parties were substituted is not

---

[39] *Cory v. Troth*, 170 Kan. 50, 52–53, 223 P.2d 1008, 1011 (1950); *Howe v. Mohl*, 168 Kan. 445, 449, 214 P.2d 298, 301 (1950). *See also Hembree v. Tinnin*, 807 F. Supp. 109, 110 (D. Kan. 1992) ("For purposes of a survival action, however, case law has established that the decedent's action survives to the decedent's 'personal representative—not to his heirs.'"); *Shinkle v. Union City Body Co.*, 94 F.R.D. 631, 637 (D. Kan. 1982) ("Kansas law requires that a survival action must be maintained by the personal representative of the decedent and cannot be prosecuted by a decedent's heirs.").

[40] 439 F.2d 300, 306 (10th Cir. 1971).

significant where the change is merely formal and in no way alters the known facts and issues on which the action is based."[41]

The Kansas Supreme Court also addressed this issue in *Vorhees v. Baltazar*.[42] Finding the 2005 Texas Supreme Court opinion *Austin Nursing Center, Inc. v. Lovato*[43] particularly useful, the *Vorhees* court held that the appointment of an administrator for the estate of a deceased defendant after the statute of limitations had expired cured the administrator's lack of capacity at the time the action was commenced.[44] Even though *Vorhees* involved a defendant rather than plaintiff, the *Vorhees* court noted it had previously ruled in *Williams v. Missouri Valley Bridge & Iron Co.*[45] that a plaintiff administrator without capacity can be exchanged for one with capacity who is appointed after the statute of limitations has run.[46] It also quoted its *Williams* characterization of an earlier precedential holding addressing the statute of limitations when a plaintiff is substituted:

> [T]he substitution of one party for another as plaintiff did not change the cause of action, and that such amendment related back to the institution of the action and that the statute of limitations stopped running as to the substituted plaintiff when the action was begun rather than when the substitution was made.[47]

This Court also notes that it has previously allowed amendment of a complaint to add the

---

[41]*Id*. (citing *Mo., Kan. & Tex. Ry. Co. v. Wulf*, 226 U.S. 570, 575 (1913)).

[42]283 Kan. 389, 399–410, 153 P.3d 1227, 1235–40 (2007).

[43]171 S.W.3d 845, 848 (Tex. 2005).

[44]*Vorhees,* 283 Kan. at 408, 153 P.3d at 1240.

[45]111 Kan. 34, 35, 206 P. 327 (1922).

[46]*Vorhees,* 283 Kan. at 405–6, 153 P.3d at 1238 (citing *Williams v. Mo. Valley Bridge & Iron Co.*, 111 Kan. 34, 35, 206 P. 327 (1922)).

[47]*Vorhees,* 283 Kan. at 402, 153 P.3d at 1236 (citing *Harlan v. Loomis*, 92 Kan. at 398, 140 P. 845 (1914)).

administrator of a decedent's estate as a plaintiff for a survival action to proceed. In *Lemons v. Board of County Commissioners*,[48] this Court, exercising its discretion under Federal Rules of Civil Procedure 15 and 17, granted a motion to amend the complaint to add the administrator of the decedents' estates as plaintiffs. The plaintiffs had originally brought suit in their capacity as heirs of the decedent, but subsequently sought leave to amend the complaint to add the administrator of the decedents' estates after the administrator was appointed.[49] Like the facts alleged in the instant motion, the defendants argued that the survival claims failed to state a cause of action under Kansas law because the plaintiffs brought the claims as the decedents' heirs instead of the personal representatives of the decedents' estates.[50] Finding that the survival claims arose out the same occurrence set out in the original complaints and that the defendants had timely constructive notice of the claims before the limitations period expired, this Court permitted the plaintiffs to amend the capacity in which they brought their causes of action and further permitted the amendments to relate back to the filing date of the original complaints under Fed. R. Civ. P. 15(c).[51]

Another District of Kansas case allowing post-statute of limitations amendment of the plaintiff's legal capacity for prosecuting a survival claim is *Shinkle v. Union City Body Co.*[52] In that case, the court allowed the plaintiffs, who brought the action as "heirs at law of the decedent," to amend their complaint naming one of them as administrator of the decedent's estate and held that

---

[48] No. 00-2292-KHV, 2001 WL 1717856, at *4 (D. Kan. Aug. 8, 2001).

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] 94 F.R.D. 631, 637–38 (D. Kan. 1982).

the amendment related back to the filing of the original complaint even though the amendment was two years after the cause of action arose.[53] The *Shinkle* court reasoned that the amended complaint related back to date of filing of original complaint because there had been no change in parties, and all parties were on notice of the facts from which the claim arose.[54] The court found that its decision to allow the amendment was consistent with the Tenth Circuit's decision in *Metropolitan Paving Co. v. International Union of Operating Engineers*,[55] where it found the expiration of the applicable statute of limitations before the real parties were substituted was not significant where the change was merely formal and did not alter the known facts and issues on which the action was based. The *Shinkle* court also found that allowing the substitution to relate back was in agreement with the Tenth Circuit's interpretation of Kansas case law on the issue:

> [W]here a cause of action is instituted by one not authorized to maintain it and thereafter the proper party plaintiff is substituted in his place, the substitution relates back to the commencement of the action and the statute of limitations stops running as to the substituted plaintiff from the filing of the original action, rather than from the date of the substitution.[56]

Like the *Lemons* and *Shinkle* opinions, the Court holds that Plaintiff's proposed amendments, including her proposed substitution as special administrator of the decedent's estate, would relate back to the filing of the original complaint under Fed. R. Civ. P. 15(c)(1)(B). Under that Rule, an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

---

[53]*Id.*

[54]*Id.* at 637.

[55]439 F.2d 300, 306 (10th Cir. 1971).

[56]*Montgomery Ward & Co. v. Callahan*, 127 F.2d 32, 36–37 (10th Cir. 1942) (citing *Williams*, 111 Kan. at 34, 206 P. at 327, and *Harlan*, 92 Kan. at 398, 140 P. at 845)).

attempted to be set out—in the original pleading."[57] The survival claim arose out of the same conduct and facts alleged in the original complaint. Defendant also had notice that Plaintiff was asserting a survival claim by the substance of the allegations in the original complaint, which requested damages sustained by the decedent for his conscious pain and suffering. Finally, as Plaintiff has now been appointed the special administrator of the estate and would be the real party in interest on the survival claim, Fed. R. Civ. P. 17(a)(3) allows for her substitution. Also, with respect to the post-limitations timing of Plaintiff's appointment as administrator, Rule 17 provides that after substitution, the action "proceeds as if it had been originally commenced by the real party in interest."[58] Plaintiff's substitution as the real party in interest would thus relate back to the date the action was originally commenced under Rule 17(a)(3). Accordingly, the Court finds Plaintiff's proposed amendment is not futile and grants Plaintiff's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Second Motion to Amend Complaint (ECF No. 93) is granted. **Within seven (7) days of the date of this Memorandum and Order**, Plaintiff shall electronically file her First Amended Complaint attached to her motion, but revised to reflect that Plaintiff was appointed as special administrator of the estate of Ronald Hoskinson by the June 26, 2013 Order Appointing Special Administrator Nunc Pro Tunc.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for a Continuance of the Pretrial Conference (ECF No. 89) is granted. The Final Pretrial Conference is rescheduled for **August 22, 2013 at 3:00 p.m.** and will be held by telephone conference call initiated by the Court. The parties are to submit their proposed Pretrial Order, revised to reflect the Court's rulings herein, no later than

---

[57] Fed. R. Civ. P. 15(c)(1)(B).

[58] Fed. R. Civ. P. 17(a)(3).

**August 15, 2013**.

Dated this 7th day of August 2013 at Kansas City, Kansas.

> S/ David J. Waxse
> David J. Waxse
> United States Magistrate Judge